UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

YUNJATH DANIEL P.V.,

        Petitioner,

    v.

WARDEN, CALIFORNIA CITY
CORRECTIONAL CENTER; et al.,

        Respondents.

No. 2:26-cv-01372-TLN-CKD

A # 241-816-174

**ORDER**

This matter is before the Court on Petitioner Yunjath Daniel P.V.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Motion for Temporary Restraining Order ("TRO") (ECF No. 2). The matters are fully briefed. (*See* ECF Nos. 7, 11, 12, 13-1, 15, 16.) For the reasons set forth below, Petitioner's habeas petition is GRANTED.[2] (ECF No. 1.) Petitioner's Motion for TRO is DENIED as moot. (ECF No. 2.)

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    On June 25, 2026, the Court issued a minute order granting Petitioner's habeas petition and ordering his immediate release. (ECF No. 17.) This Order explains the Court's reasoning.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum-seeker who entered the United States on July 2, 2022.  (ECF No. 1 at 1; ECF No. 7-1 at 2.)  After presenting himself to immigration authorities for inspection, Petitioner was released into the United States on parole.  (ECF No. 1 at 19; ECF No. 7-1 at 4.)  In the time that followed, Petitioner established a life in Itasca, Illinois.  (ECF No. 1 at 11.)  He obtained employment authorization and worked as an assembler, which allowed him to finance a vehicle.  (*Id.* at 2, 5.)  He applied for asylum.  (*Id.* at 11.)  Petitioner maintains that he complied with all immigration requirements, is not a danger to the community, and is not a flight risk.  (*Id.* at 11, 14.)

On January 3, 2026, while in Florida, Petitioner was arrested following an accusation of shoplifting under Fla. Stat. § 812.014(3)(A), which applies to a maximum loss amount of $100 and is the lowest-grade misdemeanor theft in Florida.  (ECF No. 7-2 at 5; ECF No. 11 at 2.)  According to Petitioner, he had twice requested assistance with self-checkout at a store, and when he attempted to exit, it was determined he was in possession of bananas he had not paid for.  (ECF No. 11 at 2.)  Petitioner had no criminal history prior to this incident.  (ECF No. 1 at 11.)  A state criminal judge reviewed the matter and granted Petitioner bond.  (*Id.*)  He was released on bond on January 4, 2026, and then immediately taken into custody by U.S. Immigration and Customs Enforcement ("ICE").  (*Id.*; ECF No. 7-1 at 2.)  On January 7, 2026, the Fourteenth Judicial Circuit, Bay County, Florida, entered a Deferred Prosecution Agreement, deferring prosecution of Petitioner's misdemeanor case for twelve months at which point the charges will be dropped if Petitioner complies with certain conditions.  (ECF No. 13-1 at 2.)

Petitioner was initially detained at the Alligator Alcatraz facility in Florida and then transferred between detention facilities in Texas and Arizona before arriving to California City.  (ECF No. 1 at 11.)  Petitioner suffers from a fractured fibula in his right leg and submits that he has been denied adequate medical treatment, leaving him in constant pain and with worsening physical and mental health.  (*Id.* at 5–6, 13–14.)  On April 30, 2026, nearly three months into his detention, an immigration judge ordered Petitioner removed to his country of citizenship but granted withholding of removal.  (ECF No. 12-1.)

2

Petitioner has now been detained for approximately seven months. (ECF No. 1 at 2.) He has not received a bond hearing. (*Id.* at 2.) Petitioner now challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 8–10.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 8–9.) In opposition, Respondents first argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c).[3] (ECF No. 7 at 3–6.) In a subsequent filing, Respondents argue Petitioner is now detained under §§ 1231(a)(1) and (a)(2) ("§ 1231"). (ECF No. 15 at 1–2.) Respondents further assert the shift in Petitioner's detention authority renders his habeas claims moot. (*Id.* at 2.) The Court considers Petitioner's constitutional claim before addressing mootness.

### A.    Fifth Amendment Due Process Clause

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V;

---

[3]    Unless otherwise noted, citations to statute herein refer to Title 8 of the United States Code.

*Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.      *Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a protected liberty interest in his continued freedom.  The Government's decision to release Petitioner on parole when he came to the United States in 2022 was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release.  *Morrissey*, 408 U.S. at 482.  Petitioner maintains that he complied with the conditions of his release.  Respondents do not dispute this.  Furthermore, Petitioner has lived in the United States for nearly four years during which time he worked, built a life, and pursued his immigration case.  Petitioner has a clear liberty interest in his continued freedom protected by the Fifth Amendment.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions allowing petitioner to remain in the community for over five years strengthened his liberty interest).

4

Respondents' arguments on the applicability of §§ 1226(c) and 1231 do not alter the Court's analysis.  (ECF Nos. 7, 15.)  The Court is unpersuaded by Respondents' argument that Petitioner is subject to mandatory detention under § 1226(c).  Section 1226(c) provides for mandatory detention of a noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]"  8 U.S.C. § 1226(c)(1)(E)(ii).  However, requiring mandatory detention for a mere arrest where prosecutors decline to press charges, or for charges later resolved by acquittal or dismissal, raises serious due process concerns.  *Singh v. Chestnut*, No. 1:26-CV-00546-DJC-AC, 2026 WL 266021, at \*2 (E.D. Cal. Feb. 2, 2026) (noting the same).  For that reason, courts have construed § 1226(c) to apply only where a noncitizen is currently charged with or arrested for the crimes listed in the statute.  *Id.*; *see also Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at \*6 (S.D. Iowa Sept. 30, 2025) (noting § 1226(c) "no longer requires mandatory detention when charges are resolved via acquittal or dismissal and none of the other clauses apply").  That is the case here where Petitioner's charges have been deferred pending compliance with certain conditions.  (ECF No. 13-1 at 2.)  As local authorities have exercised their discretion not to prosecute Petitioner's criminal case at this time, the Court is not persuaded that § 1226(c) mandates Petitioner's detention.

As to Respondents' second argument on the applicability of § 1231, a new statutory basis for detention does not unilaterally terminate Petitioner's liberty interest or vanish his due process claims.  *See Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL 2996577, at \*4 (E.D. Cal. Oct. 24, 2025) (noting a "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the 'shall' in [§] 1226 gives way to as-applied due process challenges, so too must the 'shall' in [§] 1231(a)" (citing *Demore*, 538 U.S. at 526; *Nielsen v. Preap*, 586 U.S. 392, 419 (2019); *Hernandez Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 WL 2802230, at \*3 (N.D. Cal. Apr. 4, 2023))).  "Petitioner's rights are not limited to those laid

out by statute." *Mohammed v. Warden of California City Det. Ctr.*, No. 1:26-CV-00118-DJC-CSK, 2026 WL 192368, at \*2 (E.D. Cal. Jan. 26, 2026) (citing *Nielsen*, 586 U.S. at 420); *see also Doe*, 787 F. Supp. 3d at 1093 ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.") (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)). Accordingly, the Court finds Petitioner maintains a clear interest in his continued liberty protected by the Due Process Clause.

### B. Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's constitutional right to a custody or bond hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094 ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872

F.3d at 994.  At the time Petitioner was detained and in nearly three months of detention, Petitioner was not subject to a final order of removal.  Although a removal order has since been entered, Petitioner has been granted withholding of removal and Respondents put forth no evidence or argument to suggest that his removal is imminent or reasonably foreseeable.  As Petitioner points out, Respondents generally allude to Petitioner's removal to a third country but identify no specific country, present no evidence that a country has agreed to accept him, and offer no timeline for removal.  Respondents also do not claim Petitioner is a danger to the public or a flight risk.  Instead, prior to his misdemeanor case, Petitioner had no criminal history and was working and establishing a life for himself.  The risk that Petitioner is being detained without proper justification is therefore exceedingly high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without procedural protections is low.  The effort and cost required to provide Petitioner procedural safeguards are minimal.  *See Doe*, 787 F. Supp. 3d at 1094.  Custody determination hearings are routine processes for Respondents.  The Court certainly recognizes the Government has an interest in immigration enforcement and removing individuals for whom there is a final order of removal.  However, the Government can execute its interests in removing individuals while adhering to the most basic procedural safeguards.  Respondents set forth no legitimate interest in continuing to detain Petitioner without such safeguards.  Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to a hearing before a neutral decisionmaker to ensure his detention was justified.  Respondents provided no such hearing over Petitioner's nearly seven months of detention.  Respondents have therefore violated Petitioner's Fifth Amendment procedural due process rights.[4]

///

---

[4]    Petitioner also challenges his detention as violating the Immigration and Nationality Act. (ECF No. 1 at 8.)  As the Court concludes Petitioner's detention violates the Constitution, the Court need not address Petitioner's statutory claim.

C.    Mootness

Respondents argue their detention authority under § 1231, acquired nearly three months into Petitioner's dentition, moots this habeas action.  (ECF No. 15 at 2.)  "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."  *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  "The burden of demonstrating mootness is a heavy one."  *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001).  And a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *United States v. Yepez*, 108 F.4th 1093, 1099 (9th Cir. 2024) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

The basis for Petitioner's claim is constitutional, not statutory.  Therefore, it does not evaporate with a shifting basis for statutory authority.  *See Alvarenga Matute*, 2025 WL 2996577, at *4; *Doe*, 697 F. Supp. 3d at 943.  As the Court found above, Respondents have violated Petitioner's due process rights.  This Court can return Petitioner to liberty and enter a remedy to ensure any re-detention complies with the Constitution.  Thus, a live controversy still exists for which this Court may provide redress.  Without explanation or case law explaining how later-acquired statutory authority cures a constitutional violation or eliminates a controversy, Respondents' conclusory statements as to mootness are insufficient.

**IV.    CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED:

1.    Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2.    Petitioner's Motion for TRO (ECF No. 2) is DENIED as moot.

3.    Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing

evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

    4.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: June 25, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE